11-4358-cv
Secrest v. Merck, Sharp & Dohme Corp.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**


August Term, 2012

(Argued: January 8, 2013      Decided: January 30, 2013)

Docket No. 11-4358-cv


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

*In re*: FOSAMAX PRODUCTS LIABILITY LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LINDA SECREST,

       *Plaintiff-Appellant*,

   v.

MERCK, SHARP & DOHME CORP.,

       *Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Before: KATZMANN, LOHIER, <u>Circuit Judges</u>, and RAKOFF, <u>District Judge</u>.[*]

     In this products liability action, Linda Secrest appeals from a judgment of the United States District Court for the Southern District of New York (Keenan, <u>J.</u>) granting summary judgment on Secrest's claim that Merck, Sharp & Dohme Corp. failed to issue adequate warnings regarding the risks associated with using Fosamax, a prescription drug. Secrest contends that the District Court erroneously discredited expert testimony from one of her treating physicians that (1) unequivocally and inexplicably contradicted the physician's prior deposition

---

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

testimony, (2) was central to the failure to warn claim, and (3) followed the filing of Merck's summary judgment motion. Under these circumstances, the District Court's decision to discredit the later testimony was not error. We AFFIRM.

TIMOTHY M. O'BRIEN, Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., Pensacola, FL, for Plaintiff-Appellant.

ANDREW GOLDMAN, Goldman Ismail Tomaselli Brennan & Baum LLP (Theodore V.H. Mayer, William Joseph Beausoleil, Hughes Hubbard & Reed LLP, New York, NY; Paul F. Strain, Venable LLP, Baltimore, MD, on the brief), for Defendant-Appellee.

PER CURIAM:

Linda Secrest appeals from a judgment of the United States District Court for the Southern District of New York (Keenan, J.) granting summary judgment in favor of Merck, Sharpe & Dohme Corp. ("Merck") and dismissing her products liability claim for failure to provide an adequate warning regarding the risks associated with Fosamax, a prescription drug. In this appeal we consider whether the District Court erred in granting Merck's summary judgment motion after discrediting expert testimony from Secrest's treating physician. Because the physician's expert testimony contained contradictions that were unequivocal and inescapable, unexplained, arose after the motion for summary judgment was filed, and were central to Secrest's failure-to-warn claim, we hold that the District Court did not err in determining that there was no genuine dispute of material fact raised by the later testimony. Accordingly, we AFFIRM the judgment of the District Court.[1]

---

[1] In a separate summary order filed simultaneously with this opinion, we affirm the District Court's judgment with respect to Secrest's challenges to the jury trial on her design defect claims and the resulting jury verdict and judgment in Merck's favor.

**BACKGROUND**

Fosamax is a prescription drug manufactured by Merck that falls within a class of drugs known as bisphosphonates, which are commonly used to treat bone conditions such as osteoporosis. Fosamax has allegedly been linked to osteonecrosis—bone death—of the jaw ("ONJ"), a condition characterized by areas of dead jaw bone that become exposed to the oral cavity.

Secrest claimed that Merck should have known of a possible link between Fosamax and ONJ as early as 1995, when it received reports about patients who had developed "dental pain" or "dental infection" during clinical trials of the drug. While disputing that these reports put it on notice of such a link, Merck acknowledged that it received a report explicitly stating that a Fosamax patient had developed ONJ in October 2003, and that it received more reports of ONJ in Fosamax patients in 2004. In January 2005 Merck received a letter from the Food and Drug Administration (the "FDA") requesting that Merck state in the Fosamax label that ONJ had been reported in patients taking bisphosphonates. In July 2005 Merck and the FDA agreed that Merck would include the following warning in the Fosamax label: "Osteonecrosis of the jaw . . . has been reported in patients taking bisphosphonates. . . . Known risk factors for osteonecrosis include . . . co-morbid disorders (e.g., pre-existing dental disease, anemia, . . . infection)." That warning was first posted on Merck's website and distributed to physicians in August 2005.

Secrest, a resident of Florida, began taking Fosamax in 1998 when her long-time primary-care physician, Dr. Lawrence Epstein, prescribed the drug to prevent fractures and

3

osteoporosis. Dr. Epstein prescribed Fosamax between June 1998 and March 2003.[2] Starting in December 2003, Secrest's new doctor, Dr. Dennis Hidlebaugh, prescribed Fosamax for her.

Secrest has a history of dental injuries dating back to at least 1999. When a serious and chronic infection "in and around [her] jaw" developed in March 2004, Secrest was referred to Dr. Robert E. Marx, who diagnosed her condition as ONJ. Following Dr. Marx's recommendation, Secrest stopped taking Fosamax in April 2005, and her ONJ is alleged to have healed by August 2005.

Although Secrest started this action in federal court in Florida, in August 2006 the case was transferred to the Southern District of New York by the Judicial Panel on Multidistrict Litigation for pretrial proceedings as part of the consolidation of all federal cases involving allegations that ingestion of Fosamax had caused ONJ. See In re Fosamax Prods. Liab. Litig., 444 F. Supp. 2d 1347, 1349-50 (J.P.M.L. 2006). The case, in which Secrest asserted, among other things, product liability claims for failure to warn and design defect, was then selected to proceed to trial as one of several "bellwether" cases.

In January 2011, before trial, Merck moved for summary judgment on all of Secrest's claims. In response, Secrest offered no evidence from Dr. Hidlebaugh, who had been prescribing her Fosamax when she first developed ONJ. Secrest offered instead the "expert" testimony of Dr. Epstein, who, she claimed, had continued to consult with her about Fosamax. Dr. Epstein was deposed twice – in August 2008, well prior to Merck's summary judgment

---

[2] Merck also disputed whether Secrest had a Fosamax prescription for the entire period between 1998 and 2003. This dispute, however, is irrelevant to this appeal, which is from the grant of a motion for summary judgment, and in which we construe the evidence in the light most favorable to Secrest, the non-moving party. Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 85 n.1 (2d Cir. 2011).

4

motion, and in February 2011, just after Merck's motion was filed. Dr. Epstein was originally deposed as a fact witness. After Merck moved for summary judgment, Secrest designated him as an expert, and he was accordingly re-deposed.

During the first deposition in 2008, Dr. Epstein admitted that he "was not aware" in 2004 and 2005, when Secrest developed ONJ, "that she was continuing on the Fosamax" or that Dr. Hidlebaugh had continued to prescribe her Fosamax "for two years more than what [he] suggested," and he also admitted that he "did not know that she was on Fosamax from 2003 to 2005 because [he] had wanted her on [a different drug]." By contrast, in his February 2011 deposition, Dr. Epstein testified that he "knew she was on [Fosamax]" in 2004 and 2005 and that, had Merck warned him about the risk of ONJ, he would have recommended that Secrest stop taking Fosamax. More specifically, Dr. Epstein testified that, beginning in 2003, he was "assisted by [Dr. Hidlebaugh] who was taking over [his] prescribing habits." He explained that he spoke with Dr. Hidlebaugh and "advised him to continue [his] treatment before [he] knew any of the ill effects of this drug," adding that "[a]ll I can tell you is that Dr. Hidlebaugh and I talked and that he agreed to assume her care and follow my care plan." Dr. Epstein further testified that he "knew [Secrest] was on [Fosamax]" based on her "prescription fills." Only after he was designated as Secrest's expert did Dr. Epstein remember speaking to Dr. Hidlebaugh.

After reviewing Dr. Epstein's testimony from both depositions, the District Court held that there was no admissible evidence of a causal connection between Merck's failure to warn about ONJ in 2004 and 2005 and Secrest's ONJ, as Dr. Epstein's new testimony that he knew that she took Fosamax during that period was not based on personal knowledge. So far as we can tell the District Court appears to have rejected Dr. Epstein's new testimony for two related

5

reasons. First, viewing Dr. Epstein's testimony as resting on little more than an "assum[ption]" that Secrest was taking Fosamax at the relevant time, the District Court rejected as "purely speculative" Dr. Epstein's assertion that he would have warned Secrest to stop taking Fosamax if Merck had included a different warning. Second, it pointed to Dr. Epstein's admission that he "knew" about Secrest's Fosamax use in 2004 and 2005 based on a recent review of Secrest's prescription records, rather than personal knowledge obtained during the relevant period.

This appeal followed.[3]

## DISCUSSION

We review the District Court's grant of summary judgment de novo, "applying the same standards applied by the district court." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 567 (2d Cir. 2011). "Summary judgment may be granted only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). In ruling on a motion for summary judgment, a district court "may rely on any material that would be admissible at a trial." Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012) (quotation marks omitted); see also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., 635 F.3d 48, 52 (2d Cir. 2011) ("[T]he non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial . . . .") (quotation marks omitted). Because this is a diversity case, we apply state substantive law (here, Florida law) and federal procedural law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).

---

[3] The District Court denied the motion for summary judgment as to Secrest's strict liability and negligent design defect claims, which proceeded to trial. After the jury returned a verdict for Merck, Secrest timely appealed from the final judgment entered on October 5, 2011.

To prevail on a failure-to-warn claim under Florida law, a plaintiff must prove three elements: (1) the warnings accompanying an item were inadequate, (2) the inadequacy of the warnings caused the plaintiff's injury, and (3) the plaintiff suffered an injury from using the product. Colville v. Pharmacia & Upjohn Co., 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008) (applying Florida law); see Scheman-Gonzalez v. Saber Mfg. Co., 816 So. 2d 1133, 1139-40 (Fla. Dist. Ct. App. 2002). Under Florida law, "[t]he manufacturer's duty to warn of the drug's dangerous side effects is directed to the physician rather than the patient." Upjohn Co. v. MacMurdo, 562 So. 2d 680, 683 (Fla. 1990). To prove causation, a plaintiff must therefore show that a treating physician would have recommended that the patient cease taking the drug if a different, adequate warning had been provided. See Christopher v. Cutter Labs., 53 F.3d 1184, 1187 (11th Cir. 1995) (applying Florida law); Baker v. Danek Med., 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998) (same).

With these principles in mind, and considering Dr. Epstein's clearly contradictory August 2008 and February 2011 deposition testimony, we need not resolve whether the District Court erred when it concluded that Dr. Epstein had no personal knowledge that Secrest was taking Fosamax. Instead, we hold that the District Court was entitled to disregard Dr. Epstein's new testimony relating to his knowledge based on the "sham issue of fact" doctrine, which prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony. See Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969). Although we have typically applied the sham issue of fact doctrine where a party submits an affidavit that contradicts the party's own prior statements, it may also apply when a party attempts to use evidence from an expert witness to defeat summary judgment. See

7

AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 736 (2d Cir. 2010) (holding that plaintiffs' expert report that contradicted plaintiffs' prior representations was insufficient to defeat motion for summary judgment). In particular, the doctrine applies to stop Secrest from manufacturing a factual dispute by submitting testimony from an expert whom she tendered, where the relevant contradictions between the first and second depositions are unequivocal and inescapable, unexplained, arose after the motion for summary judgment was filed, and are central to the claim at issue.

As relevant here, we emphasize that a sham issue of fact exists only when the contradictions in an expert witness's testimony are inescapable and unequivocal in nature. See Rivera v. Rochester Genesee Reg'l Transp. Auth., No. 11-762-cv, 2012 WL 6633938, at *7 (2d Cir. Dec. 21, 2012) (concluding that summary judgment was inappropriate because the inconsistencies in the plaintiff's testimony were not "real, unequivocal, and inescapable contradiction[s]").[4] Here, Dr. Epstein's February 2011 expert deposition testimony inescapably and unequivocally contradicted the testimony he gave in August 2008. In 2008 Dr. Epstein admitted he "did not know that [Secrest] was on Fosamax from 2003 to 2005." In February 2011 Dr. Epstein told a diametrically different story, testifying that he "knew she was on [Fosamax]"

---

[4] In the ordinary case where a district court is asked to consider the contradictory deposition testimony of a fact witness, or where the contradictions presented are not "real, unequivocal, and inescapable," the general rule remains that "a district court may not discredit a witness's deposition testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010). We expressly decline to adopt here the approach taken by the Seventh Circuit, which instead asks the district court to "examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury" for any witness. Patton v. MFS/Sun Life Fin. Distribs., Inc., 480 F.3d 478, 488 & n.6 (7th Cir. 2007).

8

in 2004 to 2005 and that he had "advised [Dr. Hidlebaugh] to continue my [Fosamax] treatment." We cannot reconcile his new testimony with his prior testimony.

Had there been some readily apparent, plausible explanation for these inconsistencies, or had Secrest proffered such an explanation, we might conclude that the District Court had erred in rejecting Dr. Epstein's testimony. We have explained that "'if there is a plausible explanation for discrepancies in a party's testimony, the court . . . should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete.'" Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011) (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 n.2 (2d Cir. 2005)). But where, as here, the relevant contradiction is not only unequivocal but is left unexplained – indeed, is inexplicable – a district court may determine that a plaintiff has manufactured a sham issue of fact. See Rojas, 660 F.3d at 105-06; AEP Energy, 626 F.3d at 735-36. We find it especially significant that Secrest has not proffered a plausible explanation that would allow a reasonable jury to reconcile the inconsistencies in Dr. Epstein's statements. See Jeffreys, 426 F.3d at 555 n.2 (noting that plaintiff "failed to explain away these obvious inconsistences with any 'plausible explanation'"); Rojas, 660 F.3d at 106 (explaining that plaintiff was "given ample opportunity to explain or reconcile [the] inconsistent and contradictory statements, but no such explanation was provided"). Instead, as the plaintiff insisted in Rojas, Secrest has "simply maintained that credibility determinations are left to the jury." 660 F.3d at 106.

In reviewing the District Court's ruling, we also consider that the contradictions in Dr. Epstein's testimony arose after Merck filed its motion for summary judgment. The timing of the testimony recanting the prior sworn testimony clearly increased the likelihood that it was

9

intended solely to defeat the motion for summary judgment.  See AEP Energy, 626 F.3d at 736 (noting that plaintiff's contradictory filings were "not submitted . . . to the district court until after summary judgment motions were filed"); cf. Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) (contrasting deposition with an affidavit "crafted for the specific purpose of defeating a motion for summary judgment").  Of course, we anticipate that in the mine run of cases in which expert witness testimony is furnished after a summary judgment motion, the testimony will suffice to defeat the motion.  But we are also aware of the greater facility with which a party can craft an affidavit, or shape deposition testimony, when evidentiary gaps have been identified in an adversary's summary judgment arguments.  We therefore consider the timing of the new testimony, in addition to the unequivocal nature of the contradictions and the lack of explanation for the change in testimony, as a relevant factor in assessing the District Court's decision.

Finally, the sham issue of fact doctrine applies here only because the relevant contradictions in Dr. Epstein's testimony were central to Secrest's failure-to-warn claim.  See, e.g., Rojas, 660 F.3d at 105; Jeffreys, 426 F.3d at 555 & n.2.  We have already noted that Florida law required Secrest to show that her treating physician would have recommended that she cease taking the drug if a different, adequate warning had been provided.  Here, no reasonable juror could find that Dr. Epstein would have recommended that Secrest cease taking Fosamax if he did not know she was taking it at the relevant time.  See Cutter Labs., 53 F.3d at 1187.

Under these unique circumstances, we conclude that the District Court did not err in concluding that Dr. Epstein's later testimony failed to trigger a genuine dispute of material fact.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the order of the District Court.