17-3196-cv
*Johnson v. Schmid, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of September, two thousand eighteen.

PRESENT:   ROBERT D. SACK,
　　　　　 REENA RAGGI,
　　　　　 DENNY CHIN,
　　　　　　　　*Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CLEAVEN JOHNSON,

　　　　　　　　*Plaintiff-Appellant*,

　　　　　　　　v.　　　　　　　　　　　　　　　17-3196-cv

CHARLOTTE SCHMID, MALCOLM BLUE,
Individual Capacity, DEPARTMENT OF CHILDREN
AND FAMILIES,

　　　　　　　　*Defendants-Appellees*,

JOETTE KATZ, Official Capacity, HOFFMAN
GAYLE, Official Capacity, JEANNETTE PEREZ,
Official and Individual Capacity, RAQUELINDA
CABRAL, Official and Individual Capacity,
STEFFANIA HANNA, Official and Individual
Capacity, MAUREEN AUGEUR, Official and

Individual Capacity, DANA GOLDBERG, Official
and Individual Capacity,

*Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:  JOSEPHINE S. MILLER, Danbury, Connecticut.

FOR DEFENDANTS-APPELLEES:  JENNIFER P. BENNETT, Assistant Attorney General (Ann E. Lynch, Assistant Attorney General, *on the brief*), *for* George Jepsen, Attorney General of Connecticut, Hartford, Connecticut.

   Appeal from the United States District Court for the District of Connecticut (Thompson, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

   Plaintiff-appellant Cleaven Johnson, a former social worker trainee at the Connecticut Department of Children and Families (the "Department"), appeals the district court's September 14, 2017 judgment, entered pursuant to its September 11, 2017 ruling, granting summary judgment in favor of defendants-appellees the Department and two Department employees on Johnson's claims that he was racially discriminated and retaliated against in violation of 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The following facts are viewed in the light most favorable to Johnson. On July 16, 2010, Johnson, an African-American male, began working for the Department as a social worker trainee through the settlement of a prior complaint he filed with the Connecticut Commission on Human Rights and Opportunities (the "Commission"). At all relevant times, the Department employed the two individual defendants-appellees, area director Malcolm Blue and social worker Charlotte Schmid.

During Johnson's classroom instruction, on three separate occasions, his instructors -- each of whom was a white female -- complained that Johnson's behavior was disruptive. The instructors reported that he sighed loudly on September 14, 2010, used a cell phone in class on September 17, 2010, and fell asleep in class on September 22, 2010. Johnson denies that he was disruptive and contends that the instructors themselves engaged in equally disruptive behavior during the classes. He also received a memorandum from his supervisor dated November 30, 2010, documenting concerns with his written narratives of client visits.

Johnson's first formal evaluation, which covered his performance from July through November 2010, gave him an overall rating of "Fair." Johnson and his attorney sent letters to the Department disagreeing with the evaluation.

On January 13, 2011, one of the Department's clients -- with whom Johnson and Schmid jointly conducted a home visit -- emailed Schmid expressing fear that her children would be taken from her based on threats she received from Johnson.

Johnson contends that the client told him that Schmid coerced her into making the complaint. Johnson told Blue that he thought Schmid had set him up, explaining that, although he did not want to file suit, he would if necessary. Blue, who is also African American, responded, "[A]re you threatening me?" App. 454. In addition, at some point several months into his employment, Blue told Johnson, "I know how you got here" -- referring to Johnson's previous complaint to the Commission -- and "there are not many of us brothers around here." App. 352. A Human Resources inquiry found that Schmid did not solicit the client complaint, and Johnson was removed from the case.

Johnson filed a second complaint with the Commission, stamped as received on March 4, 2011, alleging retaliation. On March 31, 2011, Johnson received another memorandum detailing "ongoing concerns" with his performance, focusing primarily on problems with clients. App. 407. Johnson's second evaluation, which covered his performance from November 2010 through May 13, 2011, gave him an overall rating of "Unsatisfactory." The evaluation concluded that he was "not suited for the position of Social Worker." App. 260. On May 17, 2011, Blue sent Johnson a letter advising that Johnson was being dropped "during [his] working test period as a Social Worker . . . effective May 13, 2011" and noting that the "decision [had] been made based on [Johnson's] unsatisfactory performance." App. 424.

On September 20, 2015, Johnson filed a five-count amended complaint against the Department and several employees alleging that his firing was the result of race discrimination and retaliation, in violation of Section 1983, Section 1981, and Title VII. The district court (Thompson, *J.*) dismissed all individual defendants except Johnson and Schmid. On September 11, 2017, the district court granted summary judgment in favor of the remaining defendants on all claims. Judgment was entered September 14, 2017. This appeal followed.

"We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Even in the discrimination context, . . . a plaintiff must provide more than conclusory allegations . . . and show more than 'some metaphysical doubt as to the material facts.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (summary judgment is appropriate where there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" (quoting *Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005))).

We analyze race discrimination and retaliation claims based on circumstantial evidence under the three-step *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (Title VII race discrimination and retaliation); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127-31 (2d Cir. 2013) (Section 1981 and Section 1983 race discrimination); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312-16 (2d Cir. 2015) (Title VII and Section 1981 retaliation). First, an employee must present a prima facie case of race discrimination or retaliation. *Kirkland*, 760 F.3d at 225.

> To state a prima facie case of race discrimination, a plaintiff must proffer evidence that (1) he belongs to a protected group; (2) he was qualified for his position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an inference of race discrimination.

*Id.* The requirement is "minimal" and "a plaintiff's burden is therefore 'not onerous.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (citations omitted). Second, "the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland*, 760 F.3d at 225. Third, "[i]f the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination or retaliation." *Id.*

The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff,"

*Bucalo*, 691 F.3d at 129 (alteration omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)), and "the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred," *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).  We analyze Johnson's race discrimination and retaliation claims in turn.

## I.   Race Discrimination

Johnson contends that he was fired because of his race because (1) the three white female instructors engaged in similar conduct to him but were not disciplined, (2) Johnson was evaluated by different performance criteria than other social worker trainees, and (3) Blue used a derogatory racial slur after Johnson intimated that he might file a lawsuit.  The district court concluded that these arguments failed to present a genuine issue for trial.  We agree.

We assume that Johnson met his minimal burden of establishing a prima facie case of race discrimination, as required under *McDonnell Douglas*.  The Department has articulated "a legitimate, non-discriminatory reason" for firing Johnson -- his poor performance.  We therefore proceed to the ultimate question of whether Johnson has adduced sufficient evidence from which a reasonable factfinder could conclude he was discriminated against because of his race.

First, a plaintiff may establish an inference of discrimination by establishing "that a similarly situated employee not in the relevant protected group

received better treatment," but "those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury," *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), but here no reasonable jury could conclude that Johnson was sufficiently similar to the purported comparators. They were *instructors* while he was a social worker *trainee* -- they were supervisors, and he was their student. Hence, they were not similarly situated as a matter of law.

Second, Johnson has not proffered evidence to support his argument that he was subjected to different performance criteria than his coworkers. Johnson contends that he was required to collect information on his Family Case Plans that his coworkers were not required to collect.[1] Even assuming that these requirements for collecting information constitute performance criteria, there is no evidence to support the inference that any different requirements resulted from impermissible race-based discrimination, rather than differences in the cases themselves. Moreover, Johnson provides only two comparators, one of whom was Hispanic, and the other of whom was also African-American.

---

[1] Family Case Plans are apparently forms that are used to record case information, such as the members of a household, written narrative assessments, and objectives, among other things.

Third, as for the derogatory racial slur, Johnson averred for the first time in opposing summary judgment that Blue told him, in response to Johnson's suggestion that he might file a lawsuit, "[A]re you threatening me *boy*?" App. 355 ¶ 41 (emphasis added). A party may not defeat summary judgment "by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), particularly where the contradiction "is left unexplained -- indeed, is inexplicable," *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (per curiam). Johnson's previous characterization of Blue's statement, made in response to interrogatories, omitted the word "boy," and he has not even attempted to explain his initial omission of the racial epithet that he now relies on as key proof of race discrimination. Moreover, Johnson has not pointed to any other purportedly racist remarks, *see Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("'[S]tray remarks' alone do not support a discrimination suit."). Thus, Johnson's new allegation regarding Blue's use of a purported racial epithet does not raise a genuine issue for trial.

Finally, even setting aside the client complaint Johnson alleges was improperly solicited by Schmid, the Department proffered extensive and largely undisputed evidence showing that Johnson was a poor performer, including reports of his disruptive behavior in classrooms in September 2010; a November 30, 2010 memorandum from his supervisor documenting concerns with his written narratives; a

March 31, 2011 memorandum detailing "ongoing concerns" with his performance; and two evaluations reflecting concerns with certain aspects of Johnson's performance.

In light of the absence of evidence Johnson has produced to support the inference that he was fired because of his race, balanced against the Department's strong evidence of his poor performance, we conclude that Johnson failed to meet his ultimate burden of producing evidence "sufficient to support a reasonable inference that prohibited discrimination occurred." *James*, 233 F.3d at 156.

## II.    Retaliation

To establish a prima facie case of retaliation, the plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).  To establish a causal connection, plaintiff must demonstrate that "the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *see also id.* at n.5 (Title VII retaliation claims must be proved based on traditional but-for causation principles).  Johnson argues that client complaints against him were fabricated, various negative memoranda and evaluations were used "to create a paper trail for termination," Appellant's Br. 15, and these retaliatory actions were temporally proximate to protected activity.

Again, we assume that Johnson met his minimal burden of establishing a prima facie case of retaliation, as required under *McDonnell Douglas*. The Department has articulated a legitimate, non-discriminatory reason for firing Johnson -- his poor performance. We therefore proceed to the ultimate question of whether Johnson has adduced sufficient evidence from which a reasonable factfinder could conclude he was retaliated against because of protected activity.

On this record, "no reasonable trier of fact could conclude that retaliation was the 'but for' reason for [Johnson's] termination." *Zann Kwan*, 737 F.3d at 852. As described above, the Department proffered extensive and largely undisputed evidence detailing concerns with Johnson's performance in reports, evaluations, and memoranda. Although some of these reports and Johnson's ultimate firing were temporally proximate to protected activity, such as his March 4, 2011 complaint to the Commission, "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Id.* at 847. Moreover, some reports of Johnson's poor performance -- including the three instructor complaints in September 2010, the November 30, 2010 memorandum, and the first evaluation -- were made months before he filed the March 4, 2011 complaint with the Commission. Johnson has not produced any evidence to allow a reasonable jury to conclude that the Department's concerns about his poor performance were fabricated. Unlike the plaintiff in *Kirkland*, for example, Johnson has not proffered testimony from a coworker or supervisor to support his allegations. *Cf.*

*Kirkland*, 760 F.3d at 226 (noting that plaintiff's claim that certain employees "falsified and back-dated documents . . . to support [plaintiff's] poor performance reviews" was "made plausible" by the testimony of another worker -- hired to replace plaintiff -- who testified she was "asked . . . to gather negative 'information'" on plaintiff after the company learned plaintiff had sued). In light of the Department's "largely unrefuted evidence of poor performance, no reasonable trier of fact could conclude that retaliation was the 'but for' reason for [Johnson's] termination." *Zann Kwan*, 737 F.3d at 852.

We have considered Johnson's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk