*Rys v. Davis*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty-six.

PRESENT: John M. Walker, Jr.,
Richard J. Sullivan,
Joseph F. Bianco,
*Circuit Judges.*

-----------------------------------------------------------------------

SAMANTHA RYS,

*Plaintiff-Appellant,*

v.                                        No. 25-857

SABRINA DAVIS, TANYA JOHNSON,

*Defendants-Appellees.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:    MICHAEL H. SUSSMAN, Sussman & Associates, Goshen, NY.

APPEARING FOR APPELLEES: GILLIAN BARNA (Barbara D. Underwood and Judith N. Vale, *on the brief*), New York State Office of the Attorney General, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

For three months until her resignation in August 2021, Plaintiff-Appellant Samantha Rys worked as a parole officer ("PO") for the Brooklyn bureau of New York's Department of Corrections and Community Supervision ("DOCCS"). As a PO at DOCCS, Rys was supervised by a senior parole officer, Tanya Johnson, who in turn reported to the Brooklyn bureau chief, Sabrina Davis (together, "Defendants-Appellees"). Johnson and Davis are Black women, while Rys is a Caucasian woman.

In December 2022, Rys sued her supervisors under 42 U.S.C. § 1983, alleging that Davis and Johnson created a hostile work environment and constructively discharged Rys because of her race, in violation of the Equal Protection Clause of the Fourteenth Amendment.

The district court granted summary judgment for Defendants-Appellees after determining that Rys failed to meet the evidentiary burden on her hostile work environment and constructive discharge claims. Rys appeals from the district court's grant of summary judgment. In this appeal, we consider whether the district court erred in discrediting Rys's declaration as a "sham affidavit" and in granting summary judgment for Defendants-Appellees. We assume the parties'

2

familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

We review a district court's grant of summary judgment *de novo*. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" that could lead to a judgment in the non-movant's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000); Fed. R. Civ. P. 56(a).

We find that Rys failed to produce evidence that would create a genuine dispute of material fact precluding summary judgment against her. In coming to this conclusion, we note certain "unequivocal[,] inescapable, [and] unexplained" contradictions between Rys's deposition testimony and the declaration she submitted after Defendants moved for summary judgment. *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (*per curiam*). We agree with the district court's observation that these contradictions resulted from Rys's declaration being a sham affidavit and thus we disregard them.

**I.  "Sham Affidavit"**

Per the sham affidavit or "sham issue[] of fact" doctrine, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). A sham issue of fact exists when the contradictions in a party's affidavit, compared to the party's prior testimony, are "inescapable and unequivocal in nature." *In re Fosamax Prods. Liab. Litig.*, 707 F.3d at 194. "[I]f there is a plausible

3

explanation for discrepancies in a party's testimony," however, "the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (*per curiam*) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 n.2 (2d Cir. 2005)). We find three contradictions between Rys's prior testimony and her later declaration that indicate that the later declaration is a "sham affidavit."

First, Rys testified that while she did not know what other POs' caseloads looked like, Rys was assigned to "two precincts," and this was somehow "different" from others' assignments. *See* Joint App'x at 147-48.[1] Her declaration stated, in contrast, that she "was assigned to *three* police precincts" while "African American parole officers were assigned *one or two, most usually two*." Joint App'x at 604 (Pl's Decl. ¶ 7) (emphases added). To explain this contradiction, Rys refers to general "remarks" made by her coworkers and a comment written by another coworker on her farewell card stating, "I have nightmares about the 76, 78, and 84." Joint App'x at 229, 605, 610-11. Rys alleges that this comment "refreshed [her] recollection" that she was assigned to three, rather than two, precincts. Appellant Brief at 30. Rys offers no evidence, however, to support her claim that her minority

---

[1] "Q. . . . And did you – do you know what everybody else's caseload looked like? A. I kept things in my lane. I don't do that." Joint App'x at 229 (Pl's Dep. Tr. at 166:7-14). "Q. And is it your understanding that all the parole officers in the Brooklyn office had parolees within all five boroughs? A. Yes. *My jurisdiction had two precincts though* . . . which was different. Q. What do you mean by that? A. I don't know. *It just had two police [] precincts*, so it was a different kind of community[,] I guess. Q. Okay. And do you know what those precincts were? A. I don't remember the number of the precincts, no. They're just police precincts . . . *They were both* in Brooklyn." *Id*. at 147-48 (Pl's Dep. Tr. at 84:11-85:5) (emphasis added).

4

peers were assigned to fewer than three precincts, or that her caseload was more onerous than theirs.

Rys's explanation cannot cure the contradictory statements made in her declaration. Like the district court, we find it "difficult to credit Plaintiff's conclusory assertion that the comment [in her farewell card] references [her] assigned precincts when she testified that she did not recall her assigned precincts' numbers." Special App'x at 22. In any case, even assuming that Rys was assigned more precincts than her minority peers, this does not necessarily mean that Rys's caseload was more onerous than theirs. Because Rys offers no admissible evidence to support the statements in her declaration, the district court properly disregarded these contradictory facts as "sham." *See Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this [C]ircuit that a party's affidavit which contradicts h[er] own prior deposition testimony should be disregarded on a motion for summary judgment.").

Second, Rys testified about one instance in which, during her search for a "field partner," a racial comment was directed at her from another PO.[2] Special App'x at 14-15 (citing Pl's Dep. Tr. at 157:12-158:8, 159:16-21, 160:4-11) (describing an incident where a non-party PO said that she would not accompany Rys unless

---

[2] As relevant here, there were three types of "partners" for POs: field-training, office, and field. When a PO arrives at the Brooklyn office, she is assigned a partner for on-the-job training – otherwise referred to as "a partner for 'field training.'" Special App'x at 5. These partners are assigned by the bureau chief – here, Defendant-Appellee Davis. POs are also assigned partners "for office coverage" – office partners – who can handle tasks that arise if a particular PO is away from the office. Joint App'x at 462. Finally, POs are "*encourage*[*d*] . . . to go out in the field with a partner" for safety reasons – field partners – "in case a [PO] may need assistance with themselves or with the individual that's out in the community." *Id.* at 463-64 (emphasis added). These field partners were self-selected on an ad hoc basis without input from supervisors.

she got a "spray tan"). In her declaration, however, Rys recounted "*two* occasions" when "African American POs declined to partner" with her, including one instance in which another PO allegedly called Rys a "snow cone." Joint App'x at 604 (Pl's Decl. ¶ 6) (emphasis added). To explain this second discrepancy, Rys essentially argues that her "later sworn assertion addresse[d] an issue that was not thoroughly or clearly explored" in her deposition and that, in any event, Rys had raised the "snow cone" incident in her Complaint. *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014) (alterations adopted and internal quotation marks omitted) (citing *Corio*, 232 F.3d at 43); Appellant Brief at 30-31.

Even if Rys was not specifically questioned about the "snow cone" incident, she was generally asked about instances of perceived racism when seeking out partnership pairings and failed to mention the "snow cone" incident at any point. *See generally* Joint App'x at 218-25. Further, Rys's Complaint did not describe the "snow cone" incident as one made in the context of seeking a partner. *See id*. at 25 ¶ 18 ("Another co-worker told plaintiff she was the snow cone in the building and made clear that she did not fit in and could not safely do her job on account of her race"). But "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial," *Hayes*, 84 F.3d at 19, and we refuse to credit Rys's affidavit testimony when her prior deposition testimony offered no such allegation despite the opportunity to do so.

Defendants-Appellees offer an additional inconsistency that the district court failed to note. They observe that Rys testified that one of her assigned parolees was arrested for an incident that occurred *after* Rys was assigned to the

6

parolee, *see generally* Joint App'x at 168-71, 198 ("I was assigned to him shortly before that incident"), but in her declaration Rys states that her parolee's parole revocation hearing "concerned a matter which *preceded* [her] time as his assigned parole officer and could have been handled by anyone." Joint App'x at 607 ¶ 20 (emphasis added); *see also* Appellant Brief at 19. Rys offers no explanation for this contradiction. As such, we discredit it.

Nonetheless, we disagree with one of the district court's "sham" findings. In particular, Rys testified that she "did not" report any instances of negative "treatment" she received from other POs to her supervisors, Joint App'x at 222-23 (Pl's Dep. Tr. 159:16-160:18), while her declaration states that she "repeatedly raised [the] issue with Johnson about having to go out alone, without a partner, and asked for her assistance in that regard," Special App'x at 15; Joint App'x at 605 (¶ 10). Because our task is to "[c]onstrue the record evidence in the light most favorable" to Rys and "draw all reasonable inferences in [her] favor," we find no inconsistency between these two statements. *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). We read Rys's declaration to say that she repeatedly told Johnson about her general desire to be partnered with another PO. But this does not necessarily mean that Rys imparted to Johnson any negative treatment she experienced in her search for such a partner. Ultimately, even if the district court misinterpreted Rys's declaration by finding a "sham" in this instance, the other contradictions in Rys's declaration were "unequivocal and inescapable," and merit our treatment of Rys's entire declaration as a sham affidavit. *In re Fosamax Prods. Liab. Litig.*, 707 F.3d at 194.

7

Together, the factual contradictions in Rys's declaration cannot be said to contain evidence "newly discovered." *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). Instead, Rys's declaration "merely contradict[s][] h[er] prior testimony" and is "largely unsubstantiated by any other direct evidence." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)); *Jeffreys*, 426 F.3d at 551. Because the "[t]he timing of the testimony recanting the prior sworn testimony clearly increase[s] the likelihood that it was intended solely to defeat the motion for summary judgment," we conclude that Rys's declaration was a sham affidavit. *In re Fosamax Prods. Liab. Litig.*, 707 F.3d at 195.

## II.  Hostile Work Environment

We now consider the merits of Rys's claims. To bring a hostile work environment claim under 42 U.S.C. § 1983, a plaintiff must "prove conduct (1) that is objectively severe or pervasive[,] that is, conduct that creates an environment that a reasonable person would find hostile or abusive . . . , (2) that the plaintiff subjectively perceives as hostile or abusive . . . , and (3) that creates such an environment because of plaintiff's [membership in a protected class]." *Tassy v. Buttigieg*, 51 F.4th 531, 533 (2d Cir. 2022) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). The third element "may be proven by evidence of harassment in such race-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of individuals of a particular race in the workplace, or by offering some circumstantial or other basis for inferring that incidents race-neutral on their face were in fact discriminatory." *Tassy*, 51 F.4th at 533 (alterations adopted) (quoting *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112,

8

117-18 (2d Cir. 2010)). Additionally, supervisors may be liable under Section 1983 if (1) they were personally involved and (2) acted with discriminatory intent that was the "but-for" cause of the hostile work environment. *See Grullon v. City of New Haven*, 720 F.3d 133, 137-38 (2d Cir. 2013) (personal involvement); *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) ("but-for").[3]

Rys alleges that Davis and Johnson subjected her to a hostile work environment because they (1) did not assign Rys a field partner; (2) gave her a more onerous work assignment than her minority peers; and (3) deviated from standard practice and did not develop a plan of action after a parolee threatened her. Rys's first two examples are ones of alleged disparate treatment, while the third is facially neutral. In all instances, Rys generally contends that Defendants-Appellees' "actions" made her feel "disposable" and that she perceived that this behavior was racially motivated. Joint App'x at 223. Rys essentially concedes that none of these actions were overtly racist, and the record contains no evidence that Defendants-Appellees ever made racial remarks toward Rys. Instead, Rys spins another web of circumstantial evidence to argue that Defendants-Appellees' actions were motivated by racial animus.

In general, "rel[iance] on conclusory allegations [and] unsubstantiated speculation" are insufficient to make out a hostile work environment claim. *Jeffreys*, 426 F.3d at 554 (internal quotation marks omitted). To the extent

---

[3] Disparate treatment claims under the Equal Protection Clause of the Fourteenth Amendment require proof of intentional discrimination. In contrast, a disparate impact claim arising under Title VII does not require showing proof of discriminatory motive. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 604-05 (2d Cir. 1986) (clarifying the difference between both standards). Here the Complaint alleges only violations of the Equal Protection Clause that require proof of intentional discrimination.

Defendants-Appellees were personally involved in any of the events above, we agree with the district court that "Plaintiff failed to carry her burden . . . [and] show[] that the alleged conduct occurred because she is Caucasian." Special App'x at 20. For these reasons, Rys failed to show that she was discriminated against on the basis of her race, making summary judgment for Defendants-Appellees proper.

**A. Assignment of Partners**

We reject Rys's argument that, unlike her minority peers, she was never assigned a field partner.[4]

To begin, Rys is unable to demonstrate personal involvement by either Defendant because they were not responsible for making such assignments. The record reflects that Defendant Davis assigned training partners and Defendant Johnson assigned office partners. However, field partners – the type of partner Rys alleges she was never assigned – were not allocated through any formal process. Rather, these pairings were wholly voluntary.[5] Defendants-Appellees did not discriminate against Rys on account of her race simply because non-party POs chose not to partner with Rys in the field. In any case, Rys concedes that she

---

[4] On appeal, Rys also argues that she was never assigned an office partner. We decline to consider this argument because Rys did not raise it before the district court. *United States v. Gomez*, 877 F.3d 76, 94–95 (2d Cir. 2017) ("It is well settled that arguments not presented to the district court are considered waived [or forfeited] and generally will not be considered for the first time on appeal." (internal quotation marks omitted)). Rys's Complaint and her testimony only discussed Defendants' failure to assign her a field partner. *See* Joint App'x at 25, 205, 214, 219-22, 24.

[5] Rys herself testified that she was unaware if field partners were assigned or voluntary. Joint App'x at 221 (Pl's Dep. Tr. at 158:9-14) ("Q: Did S.P.O. Johnson assign these partners or were the bureau parole officers just talking to each other and obtaining their own partners when they went out? A: I don't know how they did it, but I know there was no partner for me."). We therefore agree with the district court that, "Plaintiff's denial and her briefing indicate, at best, a misunderstanding or, at worst, a willful misrepresentation of how partnering worked in the Brooklyn Office." Special App'x at 4-5.

did not complain to Johnson or Davis about perceived racial animus towards her by other POs.  Because Rys is unable to show that her supervisors "personally violated [her] constitutional rights," we reject this argument as meritless. *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) (emphasis omitted).

**B.  Assignment of Precincts and Cases**

We also reject Rys's argument that she was subjected to disparate treatment by being given more onerous assignments than her minority peers.  Defendant-Appellee Davis assigned POs in the Brooklyn office to cases and precincts based on geographical need.  But even accepting Rys's assertion that she was assigned to three precincts while her African-American colleagues were assigned to one or two, Rys marshaled no evidence to show how busy each precinct was or to demonstrate that she was assigned to more *cases* in comparison to her minority peers.  As such, her disparate treatment claim fails.

**C.  Parolee Reassignment Request**

Finally, we reject Rys's argument that Defendants-Appellees' handling of her threat complaint and the investigative process that followed reflected discriminatory animus. The record shows Defendants-Appellees took swift action to ensure Rys's safety after she was subjected to threats by her assigned parolee. *See* Joint App'x at 351, 523-27, 564, 627-28.[6]  Even if Defendants-Appellees were found to have deviated from DOCCS's procedure in handling such incidents, Rys presents no "circumstantial or other basis for inferring" that these actions were

---

[6] Defendant-Appellee Davis was the bureau chief of the Brooklyn office of DOCCS until July 14, 2021, five days before Rys's parolee absconded and a few weeks before Rys was reassigned.  Defendant-Appellee Johnson was a senior parole officer in the Brooklyn office throughout Rys's employment at DOCCS.

racially motivated. *Tassy*, 51 F.4th at 533; *cf. Stern v. Trs. of Columbia Univ. in the City of N.Y.*, 131 F.3d 305, 312–13 (2d Cir. 1997) (explaining that circumstantial evidence of a defendant's "atypical," "unprecedented," and "unusual" behavior could demonstrate discriminatory animus (internal quotation marks omitted)).

Absent evidence that her supervisors acted with discriminatory intent as to any of her hostile work environment claims, we find that the district court properly granted summary judgment for Defendants-Appellees.

**III.    Constructive Discharge**

Because Rys's hostile work environment claim fails, her related constructive discharge claim also fails. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (stating that the standard for constructive discharge is higher than the standard for establishing a hostile work environment). The district court did not err in granting summary judgment for Defendants-Appellees.

\*        \*        \*

We have considered Rys's remaining arguments and find them without merit.  For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

12