10-4132-cv
Rojas v. The Roman Catholic Diocese of Rochester

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: August 23, 2011                                        Decided: October 4, 2011)

Docket No. 10-4132-cv

SANDRA ROJAS,

       *Plaintiff-Appellant*,

       v.

THE ROMAN CATHOLIC DIOCESE OF ROCHESTER,
THE PASTORAL CENTER OF THE ROMAN CATHOLIC DIOCESE OF ROCHESTER, &
PASTOR PETER ENYAN-BOADU, INDIVIDUALLY

       *Defendant-Appellees.*

Before: MINER, CABRANES, and HALL, *Circuit Judges.*

Plaintiff-appellant Sandra Rojas appeals from a judgment entered October 6, 2010, in the

United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*),

granting summary judgment in favor of defendants-appellees on her claims of sex discrimination

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2006), and the New York

State Human Rights Law, N.Y. Exec. Law §§ 290–301. (McKinney 2010 & Supp. 2011).  The

District Court granted summary judgment after determining that Rojas had offered "sham evidence"

in opposition to the defendants' motions for summary judgment.  We hold that the District Court

1

did not err in concluding that, in light of Rojas's inconsistent and contradictory testimony, there was no genuine issue of fact to be decided by a jury.

Affirmed.

STEVEN E. LAPRADE, Christina A. Agola PLLC, Brighton, NY, *for Plaintiff-Appellant.*

DANIEL J. MOORE, Harris Beach PLLC, Pittsford, NY, *for Defendants-Appellees the Roman Catholic Diocese of Rochester and the Pastoral Center of the Roman Catholic Dioceses of Rochester.*

CHARLES A. SCHIANO, SR., Schiano Law Office, P.C., Rochester, NY, *for Defendant-Appellant Pastor Peter Enyan-Boadu.*

PER CURIAM:

Plaintiff-appellant Sandra Rojas ("Rojas") appeals from a judgment entered October 6, 2010, granting summary judgment in favor of defendants-appellees the Roman Catholic Diocese of Rochester ("the Diocese"), the Pastoral Center of the Roman Catholic Diocese of Rochester, and Pastor Peter Enyan-Boadu ("Enyan-Boadu" or "Father Peter") (jointly, "defendants") on her claims of sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (2006), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301. (McKinney 2010 & Supp. 2011). The primary issue before us on appeal is whether the District Court properly disregarded certain purported issues of fact in holding that no reasonable jury could find in favor of Rojas. Because the record shows that this was one of the "rare circumstance[s] where the plaintiff relies almost entirely on [her] own testimony, much of which is contradictory and incomplete," and where "the facts alleged are so contradictory that doubt is cast upon their plausibility," *Jeffreys v. City of New York*, 426 F.3d 549, 554, 555 (2d Cir. 2005) (internal quotation marks omitted), we hold that the District Court properly made a limited assessment of the evidence Rojas offered in opposition to summary judgment and concluded that no reasonable jury

2

could believe it. Accordingly, we affirm the District Court's judgment dismissing Rojas's claims under Title VII and the NYSHRL.[1]

## BACKGROUND

An exhaustive description of the facts of this case, including an analysis of various inconsistencies and contradictions within Rojas's account, is contained in the District Court's Decision and Order of October 6, 2010, granting the defendants' motions for summary judgment. *See Rojas v. Roman Catholic Diocese of Rochester* ("*Rojas II*"), __ F. Supp. 2d __, 2010 WL 3945000, at *1–18, *21–22 (W.D.N.Y. Oct. 6, 2010). For purposes of resolving this appeal, the following overview suffices.

Rojas was employed by the Diocese as its Coordinator for Hispanic Migrant Ministry for the Brockport Area from May 2, 2004, through November 9, 2006. Her immediate supervisor was Bernard Grizard ("Grizard"), the Diocese's Director for Parish Support Ministries. Rojas's office was located on the campus of the Church of the Nativity of the Blessed Virgin Mary ("Church of the Nativity" or "the parish"), in Brockport, New York. The Church of the Nativity is a separate corporate entity from the Diocese, though it had an arrangement with the Diocese allowing the Hispanic Migrant Ministry to operate out of offices in its Parish Center. During the time that Rojas was employed by the Diocese, Enyan-Boadu was the pastor of the Church of the Nativity. Enyan-Boadu was not an employee of the Diocese, but rather of the Church of the Nativity. In her

---

[1] The District Court dismissed Rojas's Title VII and NYSHRL claims against Enyan-Boadu after noting that Rojas had explicitly abandoned them in her opposition to defendants' motions for summary judgment; it then declined to exercise supplementary jurisdiction over her remaining common law claim of assault and battery. *Rojas v. Roman Catholic Diocese of Rochester* ("*Rojas II*"), __ F. Supp. 2d __, 2010 WL 3945000, at *18, *27 (W.D.N.Y. Oct. 6, 2010). Because Rojas makes no argument on appeal with respect to these aspects of the District Court's ruling, we do not examine them here. *See ReGen Capital I, Inc. v. Halperin* (*In re U.S.Wireless Data, Inc.*), 547 F.3d 484, 492 (2d Cir. 2008) (deeming argument not raised on appeal to be waived).

3

complaint, Rojas alleged that she was the victim of sexual harassment by Enyan-Boadu, which created a hostile work environment, and that the Diocese fired her in retaliation for her complaining about Enyan-Boadu's sexual harassment.

At the summary judgment stage, the critical issue was whether liability for Enyan-Boadu's alleged harassment could be imputed to the Diocese. This depended on (1) whether Enyan-Boadu was a "supervisor" of Rojas and (2) whether she had made any complaints to the Diocese such that the Diocese knew or should have known of the alleged sexual harassment. As explained at length in the District Court's opinion, *see Rojas II*, 2010 WL 3945000, at *1–18, *21–22, 24, the only evidence suggesting that Enyan-Boadu was Rojas's supervisor or that the Diocese knew or should have known of the alleged harassment was Rojas's own testimony, in the form of an affidavit submitted in opposition to summary judgment, and excerpts from her depositions. This evidence, the District Court found, contradicted the allegations in Rojas's complaints as well as other sworn statements that Rojas had made during the course of discovery and in a separate criminal trial of Enyan-Boadu, which had ended in his acquittal.[2] *Id.* at *19–22.

### Rojas's Conflicting Statements Regarding Enyan-Boadu's Supervisory Status

In her original complaint, Rojas alleged that Enyan-Boadu was her "co-worker" and referred to Grizard as her "supervisor." The District Court subsequently granted in part a defense motion to

---

[2] Rojas filed a criminal complaint against Enyan-Boadu with the Village of Brockport Police Department on November 5, 2006, stating that Enyan-Boadu had touched her inappropriately on three occasions in July 2006 and that he had made inappropriate sexual comments to her on October 2, 2006. On November 7, 2006, Rojas and her attorney met with members of the Brockport Police Department to arrange for Rojas to wear a concealed microphone during a meeting with Enyan-Boadu in an attempt to have him admit to sexually assaulting her. Enyan-Boadu was arrested on November 10, 2006, the day after Rojas was fired, based on the accusations in Rojas's complaint. Following the arrest, the Diocese launched an investigation, but Rojas declined to participate. Enyan-Boadu was tried before a judge of the Town Court of the Town of Sweden on July 19, 2007. At the conclusion of the bench trial, the court acquitted Enyan-Boadu of the charges against him.

4

dismiss with leave to replead. *Rojas v. Roman Catholic Diocese of Rochester* (*"Rojas I"*), 557 F. Supp. 2d 387, 400 (W.D.N.Y. 2008). In its opinion, the District Court noted that, at oral argument on the motion to dismiss, "the Court *sua sponte* raised the issue of whether [the Diocese] could be held vicariously liable for the alleged hostile environment created by Enyan-Boadu, where, according to the Complaint, Enyan-Boadu was Plaintiff's co-worker." *Id.* at 394 n.4. Despite the District Court's identification of the issue, in her amended complaint, Rojas again alleged that Enyan-Boadu was her co-worker and that Grizard was her supervisor, and she persisted in characterizing Enyan-Boadu and Grizard in this manner in her sworn responses to defendants' interrogatories. This characterization of Enyan-Boadu's and Grizard's respective roles was consistent with Rojas's earlier testimony at Enyan-Boadu's criminal trial.

In her papers opposing defendants' motion for summary judgment, however, Rojas contended that Enyan-Boadu was, in fact, her supervisor, or at least one of her supervisors. To support this assertion, Rojas relied on her own affidavit and certain portions of her deposition testimony. In her affidavit, Rojas stated that "I was never clear on who her [sic] boss was, as no one ever clarified it to me," and that "I asked who my boss is and Grizard said, 'Grizard, Jesus [Flores, another priest in the Diocese], and Father Peter [Enyan-Boadu].'" Similarly, during her April 10, 2009, deposition, Rojas stated that she had asked Grizard to "clarify who is my boss" and "[h]e said that my boss is Bernard [Grizard], Jesus [Flores,] and Father Peter [Enyan-Boadu]."

Rojas did not dispute that Enyan-Boadu's parish was a separate corporate entity from the Diocese and that she was employed by the Diocese, not the parish.

### *Rojas's Conflicting Statements Regarding the Diocese's Knowledge of the Alleged Harassment*

In three federal complaints—one before the Equal Employment Opportunities Commission ("EEOC") and two in the District Court—Rojas alleged that she had made the following generalized

5

complaints about Enyan-Boadu to the Diocese: (1) On October 30, 2006, she met with Grizard and complained that "'Father Peter is making my life miserable' and 'you need to take action.'"; (2) At an October 31, 2006 meeting with Grizard and Mary Bauer, the Diocese's Director of Human Resources, she "started to explain to [Bauer] about the hostile environment and work conditions in my work place" but was interrupted; (3) On November 2, 2006, she "wrote by e-mail to the Department of Human Resources indicating that I wanted to discuss Sexual Misconduct."[3]  None of the three pleadings contained an allegation that Rojas had complained specifically of sexual harassment by Enyan-Boadu.[4]  Subsequently, in a sworn response to a defense interrogatory asking her to "[d]escribe each occasion on which [she] complained to the defendants," Rojas indicated that the only complaint she had made to the Diocese was on October 30, 2006, when she met with Grizard and told him that "'Pastor Peter is making my life miserable' and 'you need to take action.'" Consistent with these statements, Rojas testified at Enyan-Boadu's trial that she had not made any specific complaints to the Diocese about Enyan-Boadu's harassing behavior because she felt intimidated by Enyan-Boadu.

---

[3] The text of the e-mail that Rojas sent on November 2 did not, in fact, make reference to sexual misconduct.  Rather, Rojas replied to an e-mail that a member of the Diocese's Human Resources Department had sent to all employees of the Diocese with the subject line "Sexual Misconduct Education/Awareness Workshops."  In the text of her e-mail, Rojas stated that "I really need to talk with you as son [sic] as possible," but did not raise any particular concerns, much less a specific complaint regarding Enyan-Boadu's alleged behavior.

[4] That she failed to make such an allegation even in her amended complaint before the District Court is notable, considering that the District Court had highlighted the omission in its earlier opinion on defendants' motion to dismiss.  *See Rojas I*, 557 F. Supp. 2d at 394 n.4 ("During oral argument, the Court *sua sponte* raised the issue of whether [the Diocese] could be held vicariously liable for the alleged hostile environment created by Enyan-Boadu, where, according to the Complaint, . . . Plaintiff did not notify [the Diocese] of the alleged harassment until months after it had ceased.").

6

Rojas's story changed when she was deposed by the Diocese's attorney on April 7, 2009. There, for the first time, she stated that she had complained to Grizard during her annual performance evaluation on August 8, 2006, that Enyan-Boadu was "touching" her.[5] She also testified that, at her October 30 meeting with Grizard, she "accuse[d] Father Peter that [sic] he's touching me and kissing me." Rojas relied on this testimony, as well as her own affidavit, in her papers opposing summary judgment where she asserted that she had repeatedly complained about Father Peter and "especially recalls telling the Diocese and Bernard [Grizard] that she was being sexual [sic] assaulted by Father Peter. She would tell them, 'Father Peter was touching me' and would constantly cry to them." Pl.'s Mem. Opp. S.J. at 11, *Rojas II*, No. 07-cv-6250 (CJS), (W.D.N.Y. July 1, 2010), ECF #60-4.

While Rojas relied solely on her own testimony to support these assertions,[6] the Diocese supported its motion for summary judgment with affidavits and contemporaneous e-mails and meeting notes strongly suggesting that it had no knowledge of the alleged harassment until after Rojas's employment ended, when it was reported that Enyan-Boadu had been arrested.[7]

---

[5] At an earlier point in her deposition, however, Rojas testified that she had told Grizard that Enyan-Boadu was "making my life miserable and he need [sic] to do something," and, when asked if she had said "[a]nything else," she said no. When Rojas was deposed by Enyan-Boadu's attorney on June 30, 2009, she reverted to this testimony (which was consistent with her testimony at the criminal trial), indicating that she had not reported the alleged sexual harassment during her August 8, 2006, performance review because she felt threatened by Enyan-Boadu.

It bears noting that the meeting notes memorializing the August 8, 2006, performance evaluation—which include a self-evaluation and comments written by Rojas, herself—do not indicate that she raised any concerns to Grizard at that time.

[6] Rojas also submitted affidavits from nine individuals who related, in varying degrees of generality, their impressions of Rojas and Enyan-Boadu. However, none of these individuals addressed whether Rojas had made specific complaints regarding sexual harassment to the Diocese.

[7] As noted above, *see* note 2, *ante*, Enyan-Boadu was arrested and tried on charges of Forcible Touching and Harassment in the Second Degree, but acquitted at trial.

*The District Court's Opinion*

In a detailed, 52-page opinion granting defendants' motions for summary judgment, the District Court catalogued the inconsistencies and contradictions described above (among others) and concluded that "this case goes far beyond simple issues of credibility. Rather, upon the entire record, Plaintiff has changed key aspects of her prior version of events, set forth in pleadings, trial testimony, and sworn discovery responses, in an attempt to defeat [the Diocese's] summary judgment motion." *Rojas II*, 2010 WL 3945000, at *19.[8] Having demonstrated the inconsistencies and contradictions in Rojas's account, the District Court concluded that there were no *genuine* issues of material fact that would allow a reasonable jury to find in Rojas's favor on her Title VII and NYSHRL claims. *Id.* at *24–26. After dismissing Rojas's federal claims, the District Court declined, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over her common law assault and battery claim against Enyan-Boadu. *Id.* at *27. Rojas appeals only the rulings entering summary judgment on her hostile work environment and retaliation claims against the Diocese.

## DISCUSSION

We review the District Court's entry of summary judgment *de novo*. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002). Summary judgment is appropriate when, construing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact

---

[8] The District Court rendered its decision following a hearing at which it warned Rojas's counsel of her ethical obligations under Rule 11 of the Federal Rules of Civil Procedure. *Rojas II*, 2010 WL 3945000, at *19 n.35. We note that the District Court has been compelled to warn the law firm that represented Rojas about making improper and unsupported factual representations to the court on several occasions, both prior and subsequent to its decision in this case. *See, e.g., Colombo v. E. Irondequoit Cent. Sch.*, No. 07-CV-6270 CJS, 2010 WL 6004378, at *10 n.8 (W.D.N.Y. Dec. 17, 2010); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 188-89 (W.D.N.Y. 2010); *O'Reilly v. Marina Dodge, Inc.*, No. 08-CV-6550 CJS, 2010 WL 2553458, at *8 (W.D.N.Y. June 22, 2010), *vacated on other grounds*, ___ F. App'x ___, 2011 WL 1897489 (2d Cir. May 19, 2011) (summary order); *Johnson ex rel. U.S. v. The Univ. of Rochester Med. Ctr.*, 715 F. Supp. 2d 427, 430–31 (W.D.N.Y. 2010); *Geiger v. Town of Greece*, No. 07-CV-6066 CJS, 2008 WL 728471, at *5 (W.D.N.Y. Mar. 18, 2008).

8

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* at 252 (emphasis added). In weighing the evidence on a motion for summary judgment, "the judge must ask . . . not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* The burden of demonstrating that no material fact exists lies with the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### The District Court's Assessment of Rojas's Testimony

The District Court granted summary judgment after concluding that Rojas had offered "sham evidence" in opposition to the defendants' motions. In other words, it concluded that no reasonable juror could believe certain of Rojas's factual averments in opposition to summary judgment, given contradictory statements she had made in prior sworn testimony and pleadings. Although a district court generally "should not weigh evidence or assess the credibility of witnesses," *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996), we have held that

> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). It appears from the record before us that this is such a case.

9

Rojas's opposition to summary judgment relied almost entirely on her own testimony, in the form of an affidavit and excerpts from her depositions.[9] In contrast, the Diocese submitted competent and persuasive evidence, including contemporaneous letters and meeting notes suggesting that, to the extent Rojas made complaints regarding her relationship with Enyan-Boadu, they related to the general friction between the two and made no reference to sexual harassment. Therefore, in order to determine whether there were any genuine issues of material fact to be tried by a jury, the District Court was entitled to assess Rojas's factual averments. *Jeffreys*, 426 F.3d at 554.

The District Court scrupulously detailed plain inconsistencies between the facts advanced by Rojas in opposition to summary judgment and those alleged in her original and amended complaints, in sworn interrogatory responses, in portions of her deposition testimony, in her complaints before the EEOC, and in prior sworn testimony against Enyan-Boadu at his criminal trial. *See Rojas II*, 2010 WL 3945000, at *3–22. In particular, the District Court observed that Rojas had repeatedly alleged that Enyan-Boadu was her "co-worker" and not her employer or supervisor in her earlier sworn statements and in her complaints, only to abruptly describe him as one of her supervisors in her papers opposing summary judgment. *Id.* at *21. In addition, the District Court noted that, despite expressly testifying in Enyan-Boadu's criminal trial that she made no complaint about his sexual harassment of her to the Diocese, and despite having made no allegation to the contrary in the civil

___

[9] As noted above, *see* note 6, *ante*, Rojas also submitted affidavits from nine individuals who stated generally that they believed Rojas's claims but did not in fact have any personal knowledge about whether Enyan-Boadu was Rojas's supervisor, or whether Rojas had complained to the Diocese that he had sexually harassed her. The District Court properly found these affidavits to be irrelevant and inadmissible. *Rojas II*, 2010 WL 3945000, at *18 n.33; *see* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

complaints filed in the District Court, Rojas suddenly asserted in her opposition papers and portions of her deposition testimony that she had indeed made such a complaint on August 8, 2006. *Id.* at *21–22.

These new allegations, directly contradicted by her prior sworn statements and judicial admissions, were properly rejected by the District Court after a careful consideration of the record before it. *See Jeffreys*, 426 F.3d at 555 (affirming district court's entry of summary judgment where "(1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys's testimony" (internal citation and alteration omitted)); *see also Bellafonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528–29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. Accordingly, the district court properly disregarded Universal's affidavits seeking to controvert its own pleading." (internal citations omitted)).

In so holding, we do not suggest that district courts should routinely engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment. As we observed in *Jeffreys*, "if there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." 426 F.3d at 555 n.2 (internal quotation marks and alteration omitted). However, in certain extraordinary cases, where "the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim." *Id.* at 555 (internal quotation marks and alteration omitted). To hold otherwise, and require district courts to allow parties to defeat summary

11

judgment simply by testifying to the allegations in their pleadings (or, as here, to facts *not* alleged in their pleadings), would "license the mendacious to seek windfalls in the litigation lottery." *Arrington v. United States*, 473 F.3d 329, 344 (D.C. Cir. 2006) (Brown, J., concurring in part and dissenting in part).

Here, Rojas and her counsel were given ample opportunity to explain or reconcile Rojas's inconsistent and contradictory statements, but no such explanation was provided. Rather, Rojas simply maintained that credibility determinations are left to the jury. However, as explained above, in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury. This is such a case. Therefore, the District Court did not err in concluding, in effect, that the evidence introduced by Rojas was not "of such a character that it would warrant the jury in finding a verdict in favor of that party." *Anderson*, 477 U.S. at 251 (internal quotation marks omitted).

### The District Court's Ruling on Plaintiff's Title VII and NYSHRL Claims

Having concluded that Rojas failed to create a genuine issue of material fact with respect to the imputation of liability to the Diocese, the District Court proceeded to dismiss Rojas's hostile work environment and retaliation claims. Once again, we find no error in the District Court's rulings.

#### 1. Hostile Work Environment Claim

Under Title VII,

> a plaintiff claiming he or she was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.

12

*Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks omitted).[10]

"When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994)).

Here, the District Court held that liability for the alleged sexual harassment could not be imputed to the Diocese because Enyan-Boadu was not Rojas's supervisor and there was no evidence from which a reasonable jury could find that the Diocese knew or should have known about the alleged harassment and failed to take appropriate remedial action. *Rojas II,* 2010 WL 3945000, at *24. Given its decision with respect to Rojas's contrived assertions of disputed facts, which we have affirmed, the District Court was presented with no *genuine* issue of material fact regarding whether liability for Enyan-Boadu's alleged harassment could be imputed to the Diocese. Therefore, it properly dismissed Rojas's hostile environment claims because the competent evidence in the record showed that Enyan-Boadu was not Rojas's supervisor (and indeed was employed by a distinct corporate entity), that the Diocese did provide a reasonable avenue for complaint, and that Rojas had not made a specific complaint to the Diocese such that it knew or should have known about the alleged sexual harassment.

---

[10] We have observed that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997). One notable exception to this rule is that, while an individual defendant with supervisory control may not be held personally liable under Title VII, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998), an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he "actually participates in the conduct giving rise to a discrimination claim," *id.* at 1317. This exception is of no import in this case, however, because Rojas conceded at summary judgment that she does not seek to hold Enyan-Boadu individually liable under either Title VII or the NYSHRL. Therefore, our discussion of Rojas's Title VII claims apply equally to her claims under the NYSHRL.

13

## 2. Retaliation Claim

Title VII retaliation claims follow the three-part burden-shifting analysis set out in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> First, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden in this regard is *de minimis* and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. If the plaintiff sustains this initial burden, a presumption of retaliation arises. The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If so, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted). We

have held that "implicit in the requirement that the employer have been aware of the protected

activity is the requirement that it understood, or could reasonably have understood, that the

plaintiff's [complaint] was directed at *conduct prohibited by Title VII*." *Galdieri-Ambrosini v. Nat'l Realty*

*& Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (emphasis added).

In this case, the District Court held that Rojas had failed to establish a *prima facie* case of

retaliation inasmuch as she had not shown that she had engaged in any protected activity. *Rojas II*,

2010 WL 3945000, at *26. The competent evidence in the record showed that any complaints Rojas

made were generalized and therefore the Diocese could not reasonably have understood that she

was complaining of "conduct prohibited by Title VII." *See Galdieri-Ambrosini*, 136 F.3d at 292.

Moreover, the District Court concluded that the Diocese's proffered reason for Rojas's termination

(that she had stopped coming to work) was legitimate, nonretaliatory, and nonpretextual. *Rojas II*,

2010 WL 3945000, at *26. Given the state of the record, the District Court did not err in dismissing

Rojas's retaliation claims.

14

## CONCLUSION

To summarize:

(1) We hold that the District Court's evidentiary rulings disregarding certain of Rojas's contrived factual allegations were proper under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).

(2) Consequently, we affirm the District Court's judgment dismissing Rojas's claims under Title VII and the NYSHRL.

(3) We do not consider, much less take a position on, Rojas's remaining common law assault and battery claim against Enyan-Boadu, which was dismissed without prejudice to refiling in state court and was not before us on appeal.

Accordingly, the judgment of the District Court is hereby **AFFIRMED**.

15