20-3646-cv
*Milord-Francois v. N.Y. State Office of the Medicaid Inspector Gen. et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of February, two thousand twenty-two.

PRESENT:   MICHAEL H. PARK,
           WILLIAM J. NARDINI,
           MYRNA PÉREZ,
                 *Circuit Judges*.

_____

FERLANDE MILORD-FRANCOIS,

           *Plaintiff-Appellant*,

           v.                                        No. 20-3646-cv

NEW YORK STATE OFFICE OF THE MEDICAID INSPECTOR GENERAL, DENNIS ROSEN, JANINE DANIELS-RIVERA,

           *Defendants-Appellees.*\*

_____

For Plaintiff-Appellant:          WILLIAM W. COWLES (Samuel O. Maduegbuna, *on the brief*), Maduegbuna Cooper LLP, New York, NY.

For Defendants-Appellees:         ARI J. SAVITZKY, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Anisha S. Dasgupta, Deputy Solicitor General, *on the brief*), *for* Letitia James,

---

\* The Clerk of Court is respectfully directed to amend the caption of the case as set forth above.

Attorney General, State of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis J. Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.

The New York State Office of the Medicaid Inspector General ("OMIG") temporarily promoted Ferlande Milord-Francois, a black lawyer of Haitian descent, to a managerial role. The permanency of the promotion was contingent on Milord-Francois receiving a satisfactory evaluation at the end of a one-year probationary period. OMIG demoted Milord-Francois after she received a negative evaluation report at the end of this period. Shortly thereafter, Milord-Francois sued OMIG and two of its high-level supervisors, asserting three sets of claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL"). Milord-Francois claims that she was subject to a hostile work environment, that she experienced racial discrimination for not comporting with a racial stereotype in the workplace, and that she was demoted as retaliation for raising another employee's discriminatory comments to management. The district court concluded that Milord-Francois failed to raise a genuine dispute of material fact as to her Title VII, § 1983, and NYSHRL claims and granted summary judgment in favor of Defendants. The court also declined to exercise supplemental jurisdiction over the NYCHRL claims. *See Milord-Francois v. N.Y. State Off. Medicaid Inspector Gen.*, No. 19-cv-00179, 2020 WL 5659438 (S.D.N.Y. Sept. 23, 2020).

Milord-Francois appeals, arguing that the district court failed to construe the facts and make reasonable inferences in her favor, impermissibly resolved credibility issues, and misapplied the standard governing her claims. We assume the parties' familiarity with the record.

I. **Factual Background**

Milord-Francois began working as a Senior Attorney at OMIG's Office of Counsel division in July 2010. At all relevant times, Defendant Dennis Rosen was the State Medicaid Inspector General and Defendant Janine Daniels-Rivera was the General Counsel who held ultimate responsibility for managing the Office of Counsel.[1] In February 2015, OMIG posted vacancies for Associate Attorneys, who were responsible for overseeing Senior Attorneys. Daniels-Rivera, who is black, promoted Milord-Francois and a white Senior Attorney, Barry Mandel, to Associate Attorneys, despite having interviewed several external candidates who scored better on their civil service exams. Although Mandel and Milord-Francois lacked previous supervisory experience, Daniels-Rivera believed that it was better for OMIG to "invest in [its] own," and that Milord-Francois in particular should "be given the opportunity to be trained to determine if she can develop

---

[1] The Office of Counsel is led by the General Counsel. Deputy Counsels oversee the Associate Attorneys, who in turn supervise the Senior Attorneys, the office's line attorneys.

the skills necessary to become an effective supervisor." App'x at 172. Both Mandel and Milord-Francois were required to complete a one-year probationary period before their positions became permanent. Milord-Francois was ultimately demoted back to Senior Attorney after Daniels-Rivera issued a final, unsatisfactory probation evaluation report in September 2016.

A.  Incidents Between Milord-Francois and Henzel

Milord-Francois's claims arise mainly from her interactions—both before and after her promotion—with Robyn Henzel, a white Senior Attorney at the office. While Milord-Francois was a Senior Attorney, Henzel once loudly asked Milord-Francois if she was "getting drugs in there?" when Milord-Francois entered a colleague's office for an aspirin. *Id.* at 330. Henzel then told everyone at the office "that she was concerned about [Milord-Francois] taking drugs." *Id.* Another time, during a ticker tape parade in front of the OMIG building, Henzel approached Milord-Francois "out of the blue" and said, "oh my God, your black face, your black face scares me." *Id.* at 322. Lastly, Milord-Francois stated that she overheard Henzel telling other workers that she had to go to a funeral in Harlem and, if she did not return, then "they" killed her, which Milord-Francois understood to refer to black residents in Harlem. *See id.* at 489–90. Milord-Francois never filed a formal complaint or otherwise reported these incidents to management before her promotion. She first disclosed some of these interactions in March 2016—five months into her probationary period—when Matt Chiesa, OMIG's Director of Labor Relations, talked to Milord-Francois as part of his investigation into a workplace violence complaint filed by a Senior Attorney against Henzel.

After Milord-Francois's promotion, her interactions with Henzel fared no better. On May 5, 2016, Henzel—whose direct supervisor at the time was Mandel—flatly refused to accept an assignment from Milord-Francois. Henzel started screaming and yelled "[y]ou shouldn't have been an associate attorney." *Id.* at 337. Shortly after, Daniels-Rivera convened a meeting with Milord-Francois and the other supervisors to discuss how the situation could have been handled differently. At that meeting, Milord-Francois told Daniels-Rivera that "there was nothing I could have done to alleviate the situation" because Henzel "calls me black face . . . [s]he called me angry face." *Id.* at 333. Approximately a week later, Daniels-Rivera again met with Milord-Francois to discuss what she was doing "to fix the problem" with Henzel, to which Milord-Francois replied, "I cannot fix the problem. It is not me. . . . [T]his girl uses racial slurs towards me." *Id.* at 324. According to Milord-Francois, Daniels-Rivera replied that, "as a manager, you have to accept [it]—as a manager, I have dealt with [it]. As a manager, I have experienced it. And as a manager, you have to deal with it." *Id.* at 312.

B.  Milord-Francois's Probation Reports and Demotion

In July 2016, Daniels-Rivera drafted probation reports for Mandel and Milord-Francois, giving them both unfavorable ratings with detailed explanations of their shortcomings as managers.[2] Daniels-Rivera extended the probation period for both by a month, based on their

---

[2] Prior to this, Daniels-Rivera had given Milord-Francois negative feedback on Milord-Francois's work product. For example, on March 16, 2016, Daniels-Rivera replied with critiques to Milord-Francois's March 15, 2016, email submission of a performance evaluation for one of Milord-Francois's assigned supervisees.

absences and need for time to address the issues noted in the interim report. In September 2016, Daniels-Rivera issued a negative final probation report for Milord-Francois and demoted her back to Senior Attorney. The report noted that Milord-Francois failed to improve on the deficiencies raised in the July 2016 report. At the meeting where Daniels-Rivera presented the final report, Milord-Francois testified that she complained to Daniels-Rivera that, "you never told me there was anything wrong with my work." *Id.* at 447. Daniels-Rivera's reply, according to Milord-Francois, was that there was "nothing wrong with [Milord-Francois's] work" but that Milord-Francois "wasn't implementing [Daniels-Rivera's] vision." *Id.* at 448.

## II. Discussion

"We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021).

### A. Status-Based Discrimination

Milord-Francois's racial discrimination claims under Title VII, § 1983, and NYSHRL are subject to the *McDonnell Douglas* burden-shifting framework. *See Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (Title VII); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (§ 1983); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (NYSHRL). Under this standard, Milord-Francois "bears the burden of establishing a prima facie case of discrimination by showing (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert*, 790 F.3d at 435 (internal quotation marks omitted). Once a plaintiff "makes a prima facie case of . . . discrimination . . . , the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland*, 760 F.3d at 225. "If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination . . . ." *Id.* For this last step, when a discrimination claim is based on § 1983, a plaintiff must meet a more stringent showing of "but-for" causation. *See Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019). By contrast, for claims under Title VII and NYSHRL, a plaintiff need meet only the less rigorous "motivating factor" standard. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137–38 (2d Cir. 2008). "In other words, a Title VII [or NYSHRL] plaintiff need only prove that the employer's [or supervisor's[3]] stated non-discriminatory reason was *not the exclusive* reason for the adverse employment action. By contrast, to establish 'pretext' under § 1983, a plaintiff must establish that the employer's stated reason would not, alone, constitute a *sufficient* basis for pursuing an adverse action"—i.e., "that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." *Naumovski*, 934 F.3d at

---

[3] Although "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII," there is one notable exception: "while an individual defendant with supervisory control may not be held personally liable under Title VII[,] an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if [they] actually participate[] in the conduct giving rise to a discrimination claim." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (internal quotation marks and citations omitted).

214–15.

Milord-Francois claims that she raises a triable issue as to whether racial discrimination contributed to her demotion. She argues that Daniels-Rivera, also a black woman, "demoted Milord after she refused to ignore Henzel's discrimination" and thus imposed on Milord-Francois "a type of racial stereotyping" which includes "[t]he belief that black people must excuse racism to advance their careers." Appellant's Br. at 26. The questions before us are whether Milord-Francois met her burden at the prima facie stage; if so, whether Defendants proffered a legitimate, non-discriminatory reason for Milord-Francois's demotion (namely, poor performance); and if so, whether Milord-Francois raised a factual dispute as to whether racial discrimination was a motivating factor for, or a but-for cause of, that decision.

First, although the question is close, we conclude that Milord-Francois has established a prima facie case of discrimination based on race in light of Daniels-Rivera's statements to "accept" and "deal with it," made in response to Milord-Francois's complaints of Henzel's racist comments. Although those statements may very well have been intended to convey to Milord-Francois nothing more than a view that she had a responsibility as a manager to address racially charged comments by a subordinate, there is just enough ambiguity in those statements—given the particular facts of this case, and viewed in the light most favorable to the non-moving party—to create a genuine issue of material fact as to whether Daniels-Rivera was instead perpetuating a racial stereotype by suggesting that Milord-Francois, as a black woman, should ignore racism.

Second, we conclude that Defendants have met their burden in providing a legitimate, non-discriminatory reason for demoting Milord-Francois: her unsatisfactory performance as an Associate Attorney. *See* App'x at 185–88, 216, 689–90, 1079–82, 1633–38. In deciding whether a defendant articulated a sufficient nondiscriminatory reason for an adverse action, we do not "assess the credibility of the[] witnesses; nor . . . determine whether the [defendant's] explanation of its action is convincing. Instead, we ask whether [the] defendant has introduced evidence that, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason.'" *Holcomb*, 521 F.3d at 141 (internal citation omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Third, Milord-Francois raises several arguments as to why a jury could conclude, by a preponderance of the evidence, that this reason was pretextual. We are unpersuaded by most of Milord-Francois's arguments, but viewing the evidence in the light most favorable to the non-moving party, we conclude that there is a genuine issue of material fact as to what Daniels-Rivera meant when she told Milord-Francois to "accept" and "deal with it." Milord-Francois has "raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence" that Daniels-Rivera's reason for demoting her is pretextual, and that this decision "was based, at least in part," on her race. *Id.* We therefore vacate the district court's grant of summary judgment against Milord-Francois with respect to her NYSHRL claim against Daniels-Rivera and Title VII claim against OMIG, and remand for further proceedings on those two claims.

We do, however, reject several other arguments raised by Milord-Francois. First, Milord-Francois argues that Henzel's racial animus caused Rosen to demote Milord-Francois, which is enough to show pretext under the cat's paw theory. Under that theory, "an employer may be held

5

liable for an employee's animus . . . , regardless of the employee's role within the organization, if the employer's own negligence gives effect to the employee's animus *and causes the victim to suffer an adverse employment action*." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 276 (2d Cir. 2016) (emphasis added). Based on the record, no jury could find that Rosen caused Milord-Francois's demotion. He did not assist in preparing Milord-Francois's probation evaluation reports and the decision to demote Milord-Francois rested with Daniels-Rivera, not Rosen. The district court therefore properly granted summary judgment on the status-based discrimination claims against Rosen (i.e., claims under § 1983 and NYSHRL).

Further, Milord-Francois has failed to show that racial stereotyping "played a *decisive* role" in her demotion, such that she can establish "but-for" causation, as required for a § 1983 claim. *Naumovski*, 934 F.3d at 217 (emphasis added). Indeed, she failed to show that Daniels-Rivera's proffered reason for her demotion—poor performance—was false and inadequate, especially given that Defendants put forward significant evidence that Daniels-Rivera's decision to demote Milord-Francois was based on perceived deficiencies in Milord-Francois's work rather than any racial considerations. Daniels-Rivera started providing negative feedback before Milord-Francois told her in May 2016 about the interactions between Milord-Francois and Henzel. Moreover, Daniels-Rivera's criticisms were frequent, documented, thorough, and unrelated to Milord-Francois's race. *See* App'x at 185–88 (Milord-Francois's negative interim probation report), 216 (email to Milord-Francois's direct supervisor criticizing Milord-Francois's work), 689–90 (email to Milord-Francois providing constructive criticism), 1079–82 (Daniels-Rivera's testimony concerning another employee's complaint about Milord-Francois), 1633–38 (Milord-Francois's final unsatisfactory probation report). We therefore affirm the district court's grant of summary judgment to Daniels-Rivera on Milord-Francois's § 1983 claim.

B.    Retaliation

Milord-Francois's retaliation claims are analyzed under the same burden-shifting framework as her discrimination claims. A prima facie case is established "by showing (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (internal quotation marks omitted). If a defendant proffers a legitimate, non-retaliatory reason for the adverse employment action, a plaintiff must then show "that the desire to retaliate was the but-for cause of the challenged employment action." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Univ. of Tex. V. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

Milord-Francois's theory of liability is that Daniels-Rivera and Rosen demoted Milord-Francois as retaliation after Milord-Francois complained about Henzel's discriminatory comments to Daniels-Rivera and Chiesa in May and March 2016.

As to Rosen, Milord-Francois failed to proffer any facts from which a jury could infer that Rosen knew about Henzel's remarks to Milord-Francois. As noted above, Milord-Francois never filed a formal complaint, and the record does not provide a basis to conclude that either Daniels-Rivera or Chiesa ever communicated these interactions to Rosen. He thus had no knowledge of

6

Milord-Francois's protected activity.[4]  As to Daniels-Rivera, even assuming that Milord-Francois made a prima facie showing of retaliation, these claims fail for the same reasons as her status-based discrimination claim under § 1983.  Defendants proffered the nondiscriminatory justification of poor performance as the basis for Milord-Francois's demotion.  This justification is amply supported by the record, and Milord-Francois does not provide facts from which a jury could conclude that it was her complaints about Henzel's conduct, rather than her shortcomings as a supervisor, that was a but-for cause of her demotion.

C.      Hostile Work Environment

"[T]o establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted).  This test "has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* (internal quotation marks omitted)

To support her hostile work environment claims, Milord-Francois primarily relies on Henzel's conduct at the office: (1) her comment to another employee that if she did not return from Harlem, "they" killed her; (2) the "black face" remark directed at Milord-Francois; (3) recurring instances of comments concerning Milord-Francois's "angry face;" (4) Henzel conducting background checks on everyone in the office; and (5) Henzel's statements to Milord-Francois that she should not have been promoted.

These facts are insufficient to support a hostile work environment claim.  These events did not alter the terms of Milord-Francois's employment or interfere with her job.  Although several employees filed formal complaints against Henzel, Milord-Francois did not do so.  She only raised these incidents approximately a year later to justify her negative evaluations and in response to a question during the investigation of a complaint filed by another colleague.  As to the "black face" and "angry face" comments in particular, Milord-Francois told Chiesa that she "ignored [Henzel] at the time, because [she] doesn't have power over me." App'x at 346.  The district court did not err in granting summary judgment to Defendants on these claims.

D.  Supplemental Jurisdiction Over the NYCHRL Claim

The district court declined to exercise jurisdiction over Milord-Francois's NYCHRL claims because (1) they are subject to standards different from those applied to Title VII and NYSHRL claims, and (2) the court dismissed all of the federal claims over which it had original jurisdiction.  Because we vacate the district court's entry of summary judgment as to Milord-Francois's claim for status-based discrimination under Title VII, we note that the district court's reasoning for declining to exercise supplemental jurisdiction over the NYCHRL claims is no

---

[4] Moreover, as with the status-based discrimination claim, Milord-Francois failed to proffer any facts showing that Rosen caused her demotion.  Rosen did not contribute to the probation reports and Daniels-Rivera was responsible for the decision to demote Milord-Francois.

longer applicable. The district court should therefore consider, subject to its sound discretion, whether it would be appropriate to exercise supplemental jurisdiction over Milord-Francois's NYCHRL claims at this time. *See, e.g.*, *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009).

## III. Conclusion

For the foregoing reasons, we **AFFIRM IN PART AND REVERSE IN PART** the district court's judgment. Specifically: (1) We **AFFIRM** the district court's judgment as to Milord-Francois's claims for: (i) status-based discrimination against Rosen, (ii) status-based discrimination under § 1983 against Daniels-Rivera, (iii) retaliation, and (iv) hostile work environment; and (2) We **VACATE** the district court's judgment and **REMAND** for further proceedings as to Milord-Francois's claims for: (i) status-based discrimination under Title VII against OMIG based on Daniels-Rivera's conduct, (ii) status-based discrimination under NYSHRL against Daniels-Rivera, and (iii) the district court's determination not to exercise supplemental jurisdiction over the NYCHRL claims.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court