22-798-pr
Lurch, Jr. v. Chaput, MD

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> REENA RAGGI,
> EUNICE C. LEE,
> *Circuit Judges.*

---

Robert Derek Lurch, Jr.,

> *Plaintiff-Appellant*,

> v.                                                                   22-798-pr

France Chaput, MD, RN Maria D. Marquez,

> *Defendants-Appellees.**

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | Robert Derek Lurch, Jr., *pro se*, East Elmhurst, NY. |
| FOR DEFENDANTS-APPELLEES: | Richard Dearing, Chloe K. Moon, of Counsel, *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the |

---

* The Clerk is respectfully directed to amend the caption accordingly.

City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Analisa Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 25, 2022 judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Robert Lurch, Jr., proceeding *pro se*, appeals the district court's grant of summary judgment for Defendants-Appellees France Chaput, MD and Maria Marquez, RN (the "Defendants") on due process and unreasonable seizure claims predicated on Lurch's involuntary commitment, restraint, and forcible medication in the Comprehensive Psychiatric Emergency Program ("CPEP") at Bellevue Hospital Center on December 26, 2013. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues and arguments on appeal.

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is appropriate where no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law."[1] *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). Because the district court correctly determined that there was insufficient evidence adduced at summary judgment to establish a

---

[1] Contrary to Lurch's argument, the district court did not err by granting Defendants summary judgment after denying in part their motion to dismiss. The standards for evaluating the two types of motions differ. *Compare* Fed. R. Civ. P. 12(b)(6) *with* Fed. R. Civ. P. 56. A motion to dismiss tests the *sufficiency of the allegations* in a plaintiff's complaint, taking those allegations as true. *See LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). By contrast, a motion for summary judgment, which typically follows the completion of discovery, tests whether the record contains *sufficient evidence*, with all inferences made in favor of the non-moving party, to establish that there is no genuine dispute of material fact and the movant's entitlement to judgment as a matter of law. *See LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

genuine issue of material fact as to any of Lurch's claims against Chaput and Marquez, we affirm.[2]

## I.    Involuntary Commitment

Involuntary hospitalization by state actors implicates Fourteenth Amendment rights to substantive and procedural due process and Fourth Amendment rights against unreasonable seizure. Probable cause is a complete defense to an unreasonable seizure claim, *see Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001), and, in the context of an involuntary hospitalization, it exists "only if there are reasonable grounds for believing that the person seized is dangerous to h[im]self or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (internal quotation marks omitted). The substantive due process standard is closely related, as "due process does not permit the involuntary hospitalization of a person who is not a danger either to h[im]self or to others." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). Due process is violated if a commitment decision "is made on the basis of substantive and procedural criteria that are substantially below the standards generally accepted in the medical community." *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010) (internal quotation marks and alteration omitted).

On appeal, Lurch argues primarily that the district court erred in granting summary judgment on his involuntary commitment claims because Defendants failed to present undisputed evidence that he was dangerous when committed. We disagree because Lurch has not met his burden of creating a genuine issue of material fact as to his claims based on his involuntary hospitalization. While Lurch asserts that his behavior was calm and non-threatening, he also

---

[2] We are aware that Lurch has filed a Fed. R. Civ. P. 60(b) motion before the district court to vacate the judgment that is the subject of this appeal. It appears that Lurch would like the district court to consider an expert report that Lurch obtained during discovery but never put before the district court. Our affirmance does not bear on the merits of the pending Rule 60(b) motion. Further, any appeal of the district court's ruling on the Rule 60(b) motion shall be assigned to this panel.

admits to using abusive language toward a NYPD police officer after his arrival at Bellevue and to being combative before he was physically restrained. Lurch was also handcuffed when he arrived, though not under arrest, and Chaput testified that she assumed he might have been handcuffed for safety while being transported to the hospital. Meanwhile, multiple observers contemporaneously documented that Lurch appeared agitated, combative, or at imminent risk of violence. For instance, an EMT who transported Lurch to the hospital described him in official paperwork as an "emotionally disturbed person," and a triage nurse, who saw Lurch minutes before Chaput encountered him, described him in hospital records as agitated. We also agree with the district court that, even drawing all inferences in Lurch's favor, his internally inconsistent testimony about his own demeanor is insufficient to raise a genuine dispute of material fact. Indeed, that conclusion is reinforced by Lurch's admission that he "forgot this event even happened until" he reviewed his medical records long after the incident. *See Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) ("[I]n certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury.").

Furthermore, Lurch failed to produce any expert evidence in the district court to counter Defendants' expert's opinion, which explained that their conduct, under the circumstances, was consistent with generally accepted medical standards. Such evidence is generally required to prevail on a 42 U.S.C. § 1983 claim premised on a violation of the standard of care because "non-experts typically cannot discern generally accepted medical standards for [themselves]." *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190–92 (2d Cir. 2005) (finding plaintiff who did not present expert testimony had not elicited sufficient evidence for a reasonable jury to find that defendant doctors deviated from generally accepted medical standards in ordering

4

plaintiff's temporary commitment). Lurch cannot rely on such an expert report now because he did not present it in the district court or inform the district court of any difficulty obtaining or using it, despite being represented by counsel during part of the discovery process. *See In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (internal quotation marks and alterations omitted)).

Finally, we have held that the procedures and standards articulated in the New York Mental Hygiene Law (the "MHL") satisfy due process requirements. *See Project Release v. Prevost*, 722 F.2d 960, 971–73 (2d Cir. 1983). Lurch has not cited any admissible evidence to create a genuine issue of material fact as to whether Chaput's decision to involuntarily commit him contravened the MHL. Thus, we agree with the district court that the current record reflects that Defendants substantially complied with the MHL.

For all these reasons, summary judgment was appropriately granted in Defendants' favor on Lurch's various constitutional challenges to his involuntary commitment.

**II.    Use of Restraints and Forced Medication**

The use of additional restraints and forcible medication in the context of an involuntary commitment implicates a patient's due process rights. *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (recognizing mentally ill prison inmate's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment"). With physical restraint and forcible administration, a medical professional is not liable unless the decision is a "substantial departure from accepted judgment, practice, or standards." *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (internal quotation marks omitted).

Under New York law, restraints may be employed in a CPEP "only when necessary to prevent a patient from seriously injuring himself or others" and "may be applied only if less restrictive techniques have been clinically determined to be inappropriate or insufficient to avoid such injury." N.Y. Mental Hyg. Law § 33.04(b). Restraints must be ordered in writing by an examining physician, except that in "an emergency situation," where "the patient is engaging in activity that presents an immediate danger to himself or others and a physician is not immediately available, restraint may be effected only to the extent necessary to prevent the patient from injuring himself or others at the direction of the senior member of the staff who is present." *Id.* § 33.04(d), (e). Hospitals "may give treatment . . . regardless of admission status or objection, where the patient is presently dangerous and the proposed treatment is the most appropriate reasonably available means of reducing that dangerousness." 14 N.Y.C.R.R. § 527.8(c)(1). A patient is "dangerous" for these purposes if he "engages in conduct or is imminently likely to engage in conduct posing a risk of physical harm to himself or others." *Id.* § 527.8(a)(4).

Any claim based on the use of restraints and forced medication must fail. As previously noted, Lurch has failed to raise a genuine dispute of material fact as to whether Chaput determined, consistent with generally accepted medical standards, that he presented an imminent risk of harm to himself or others. And, as explained further below, Lurch has also failed to raise a genuine dispute of material fact regarding whether Defendants reasonably determined that no less restrictive means existed to reduce his dangerousness.

Defendants presented evidence that they attempted to minimize the danger Lurch posed by, among other things, asking him to remain calm, redirecting his focus, and increasing observation of him, all without success. Lurch speculates in his brief that Defendants could have offered him oral medications; but when deposed, he testified that he informed Chaput that he did

6

not want medication, and his behavior was otherwise uncooperative and combative at the time. In any event, Chaput explained that oral medications were appropriate only when a patient consents, and that an injection would work more quickly, which would more appropriately address the immediate threat that Lurch posed. Chaput also testified that Lurch remained alert, aggressive, and agitated for at least half an hour after his medication (at which point his restraints were removed). Defendants also presented uncontested expert testimony establishing Lurch's severe intoxication and alcoholic blackout, offering additional evidentiary support for the imminent risk of harm he posed to himself and others. Absent contradictory evidence sufficient to raise a *genuine* issue regarding Lurch's restraint and medication, there is no basis to second-guess Chaput's professional medical judgment. *See Olivier*, 398 F.3d at 190–92.

We have considered Lurch's other arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Lurch has filed a motion to withdraw this appeal. Dkt. 97. The motion is denied as moot.